

**AMERICAN PUBLIC HEALTH ASSOCIATION**
*For science. For action. For health.*

APHA > Policy Statements and Advocacy > Policy Statements > Policy Statement Database > Participation of Health Professionals in Capital Punishment

# Participation of Health Professionals in Capital Punishment

**Date:** Jan 01 1985 | **Policy Number:** 8521
**Key Words:** Capital Punishment, Public Health Workforce

The American Public Health Association,

Noting that at least 37 states have enacted statutes which authorize death as a possible penalty for certain crimes; and

Whereas such state-sanctioned executions can include, and in some instances are required by state statute to include, the participation of medical professional personnel in a variety of roles, including: determination that the condemned prisoner is physically healthy and mentally competent to be executed;[1,2] and

Whereas medical professional personnel may aid in the preparation of the prisoner for execution, and, in the case of execution by lethal injection, inject the lethal substance or supervise its injection by others, monitoring the administration of execution and observing the condemned prisoner throughout the execution, examining the prisoner following administration of the method of execution, and declaring that said procedures have in fact been sufficient to kill the prisoner; and

Whereas there is no expert consensus that any of the methods now used for such state-imposed executions will produce death without pain or suffering and in several instances said methods have in fact merely inflicted wounds and injuries but have not been sufficient to cause immediate death;[3,5] and

Whereas even participation of medical personnel in the capacity of certifying that death has occurred includes the possibility that said professional shall be required to inform the executioner that the prisoner is not yet dead and that additional punishment is needed to cause the prisoner's death;[6-8] and

Whereas participation of medical personnel in the administration of torture or inhumane or degrading treatment, whether pursuant to statutory mandate or by passive supervision of others administering such treatment, is internationally condemned as contrary to the laws of humanity;[9-12] and

Whereas professional standards of health care have always forbidden the use of medical knowledge and skill for purposes of injury;[13-16] therefore

Resolves that health personnel, as members of a profession dedicated to preserving life when there is hope of doing so, should not be required nor expected to assist in legally authorized executions.

References/Footnotes

1. Larkin PJ: The Eighth Amendment and the Execution of the Presently Incompetent. 32 Standard Law Review 765 (1980).

2. Frod v. Wainwright, 752 F.2d 526 (11th Cir. 1985). (application for rehearing en banc pending). (2 to 1 panel decision, following 1950 opinion of Supreme Court, finding that minimum due process is provided by Florida state procedure provides only for governor to appoint three psychiatrists to review prisoner's sanity, without further review by other medical professionals or the courts.)

3. Chaney v Heckler, 718 F.2d 1174 (D.C. Cir. 1983). See also Heckler v. Chaney, 53 LW 4385, March 19, 1985. (Supreme Court refused 9 to 0 to require Food and Drug Administration to review substances used in state executions.)

4. Annas GJ: Killing with kindness: Why the FDA need not certify drugs used for execution safe and effective. Am J Public Health 1985;75:1096-1099.

5. Affidavit of Russell F. Canaan, prepared April 28, 1983 (describing execution of John Evans by the state of Alabama, requiring three jolts of electricity over a 14-minute period; note participation of prison doctors).

**EXHIBIT L**

6.  Brodie H: Dialogue with the District Attorney. The Prosecutor: J National District Attorneys' Assoc 1982;16:(2)12-15. (Court-room artist's description of five executions witnessed; note participation of prison doctors.)

7.  Louisiana ex rel. Francis v. Resweber, 329 US 459 (1947). (Supreme Court ruled 4 to 4 that the State of Louisiana could attempt to execute Francis after a first attempt at electrocution, involving two jolts of electricity, had failed.)

8.  Casscells W, Curran WJ: (Discussion of medical ethics involved in participation in lethal injections.) N Engl J Med 1982;307:1532-1533.

9.  Curran WJ, Casscells W: The ethics of medical participation in capital punishment by intravenous drug injection. N Engl J Med 1980;302:226-230. (Earlier discussion of medical ethics involved in lethal injections, but discusses in greater detail the history of medical participation in state executions, ethical considerations, international ethical principles; cites professional association standards and resolutions.)

10. Gardner MR: Executions and indignities—an eighth amendment assessment of methods of inflicting capital punishment. Ohio State Law J 1978;39:(1)96-130. (Describes case law and social evolution of definitions of "cruel and unusual punishment;" describes step-by-step preparation and procedures for electrocution at p 126.)

11. Branucci: New cruel and unusual punishments inflicted: the original meaning. 57 Cal. L Rev. 839 (1969).

12. Ulmer NC: Doctors and the death penalty: hippocratic or hypocritical? Christianity and Crisis 1981;41:(6)109-110. (Commentary on AMA's resolutions against participation in executions but permitting certification of death following execution.)

13. Resolution of American Medical Assocation, Chicago, 1981.

14. Resolution of American Psychiatric Association, Washington, DC.

15. Resolution of Human Rights Advocacy Committee, Florida State Hospital, December 6, 1984. (Letter to Marcia Beach, Chairperson, Florida Statewide Human Rights Committee.)

Back to Top

2018 © American Public Health Association